IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALVADOR R. SALAZAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 9230 |
| v. ) | |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Salvador Salazar's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12] is granted in part and denied in part.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 18, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since August 31, 2007, which was later amended by counsel to March 1, 2010. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

Claimant personally appeared and testified at the hearing and was represented by counsel. Plaintiff's wife Marisela Salazar and vocational expert James Breen also testified. Plaintiff's testimony was aided by the use of a Spanish interpreter.

On October 24, 2011, the ALJ denied Salazar's claim for Disability Insurance Benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied his request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[2]

### A. Background

Claimant was born on October 22, 1961 and was forty-five years old on his alleged disability onset date. He was born in Mexico and only attended school there through sixth grade; he has been a United States citizen since 1996. Salazar's prior relevant experience was as a construction laborer. He is five feet ten inches tall and at the time of the hearing weighted about 265 pounds, which calculates to a BMI of 38.0, considered to be obese.

### B. Medical Evidence

Salazar was injured in a fall from a ladder in August 2007. An MRI performed a month later showed multilevel degenerative lumbar spondylosis with spinal stenosis, particularly at the L4-5 level. After the injury, he continued following up with his treating physician Dr. Ronald Michael approximately once a

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

month. For over a year, his back and related leg pain was treated relatively conservatively, including epidural steroidal injections, facet and caudal blocks, plasma disc decompression, pain medication, physical therapy, and biacuplasty. During this time, he reported his pain as generally worsening, although it would temporarily improve after treatment.

Although he had previously expressed a reluctance to have surgery, Plaintiff ultimately underwent a lumbar posterior interbody fusion with instrumentation at L4-5 in May 2009. He reported to Dr. Michael in June 2009 that his pain was 70% improved after the surgery, and he was off medication at that time. Salazar continued to report improvement of approximately 50-60% thereafter, and in June 2010, Dr. Michael concluded that Plaintiff had reached maximum medical improvement and could work at the light exertional level. A Functional Capacity Evaluation completed by Alex Kichakov in November 2009 also concluded that Salazar could perform light to medium work.

However, in fall 2010, Salazar's back and leg pain began to increase again. Dr. Michael concluded that the pain could be caused by lumbar pseudoarthritis or irritation from the hardware implanted during the He reported to Dr. Michael in December 2010 and January 2011 that his pain was severe, he could not live with it, and he chose to have a second surgery. The surgery was performed in January 2011, and his spinal hardware was removed and replaced. He reported improvement after the surgery and physical therapy, and by January 2012, Salazar told Dr. Michael he was 60% improved. Dr. Michael reported in January 2012 that

Salazar should have a permanent five- to ten-pound restriction on lifting, with minimal bending, twisting, and lifting.

C. **Vocational Expert Testimony**

The ALJ asked Vocational Expert ("VE") James Breen whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limiting him to lifting twenty pounds occasionally and ten pounds frequently; standing or walking for six hours during an eight-hour workday; never climbing ladders, ropes, or scaffolding; occasionally climbing ramps or stairs; occasionally balancing, stooping, crouching, kneeling, and crawling; and occasionally bending and twisting, could perform any work. The VE testified that a number of unskilled light jobs would be available, including hand packager (approximately 19,000 jobs), mold machine tender (600 jobs) and electrical accessories assembler (1,350 jobs).

D. **ALJ Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of March 1, 2010. At step two, the ALJ concluded that Claimant had the severe impairment of a history of low back pain. The ALJ concluded at step three that Salazar had no impairments, alone or in combination, that met or medically equaled a listing. The ALJ then determined that he retained the RFC to perform light work with some additional limitations. The ALJ concluded at step four that Claimant could not perform his past relevant work, which was all at the heavy exertional level. At step five, based

upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that he can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts

to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

6

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

Claimant argues that the ALJ's decision was in error for several reasons, including: (1) she gave insufficient weight to the opinion of his treating physician; (2) the decision improperly weighed the witnesses' credibility; and (3) the ALJ failed to adequately explore the issue of Plaintiff's English literacy.

7

A. **Treating Physician Rule**

Claimant argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the 2012 opinion of his treating physician, Dr. Michael, which opined that Salazar should have a permanent restriction on lifting more than five to ten pounds. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The ALJ gave no weight to the weight restriction in Dr. Michael's opinion because he also reported that Salazar's symptoms had improved 60% after the second surgery. She chose to give more weight to the opinions of non-examining medical consultants who concluded Salazar could lift up to twenty pounds, and to a lesser extent the November 2009 functional capacity assessment that found Plaintiff could work at a light to medium level.

8

The Court concludes that the ALJ's decision to discount Dr. Michael's 2012 report is not supported by substantial evidence. The ALJ's reliance on the stated 60% improvement is meaningless because she failed to establish a baseline from which the stated improvement can be measured. Prior to the second surgery, Salazar complained of severe pain that he could not live with, to the point that he chose to have major surgery he had previously tried to avoid. It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition. Moreover, neither of the consulting experts' opinions (one of which was from 2009, the other of which was rendered only a few months after the second surgery) was based on an examination. The ALJ gave inadequate reasons for her choice to give more weight to the non-examining consultants over that of his treating physician and surgeon, who had seen Salazar for several years on a monthly basis and had performed both back surgeries. On remand, the ALJ should consider whether to order a medical examination to better determine Salazar's overall RFC.

### B. <u>Credibility</u>

Salazar next faults the ALJ's assessment of his and his wife's credibility. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de*

*novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

The ALJ found Salazar's testimony unpersuasive because the record shows the surgeries improved his symptoms, and he testified that his present pain level was a five out of ten even without medication. As explained above, "improvement" by itself does not demonstrate the lack of disabling symptoms. The ALJ did not find

10

that Salazar's reported activities of daily living were not credible or that they were inconsistent with his claims of disabling pain. Salazar testified that he does not walk or stand for long periods; he needs assistance in getting up from a sitting position; he only can lift five to ten pounds; he has difficulty climbing stairs; he does not prepare food, nor does he do any housework, yard work, or snow removal; his wife or children take out the garbage; and he needs help dressing. It is possible that Salazar's pain is currently manageable as a result of his limited activity level. In any event, it is unclear from the record whether Salazar could withstand the rigors of competitive employment at the light level, including lifting up to twenty pounds and walking/standing up to six hours out of an eight-hour workday.

The ALJ also failed to offer a persuasive reason for discounting the testimony of Salazar's wife, who corroborated his claims about his daily activities, including that she has to help him dress and put on shoes due to his inability to bend over. The ALJ acknowledged that the Salazars' reports were consistent with each other but found that "the close relationship between the witness and the claimant and the possibility that the testimony was influenced in favor of the claimant by compassion and a desire to help the claimant cannot be entirely ignored in deciding how much weight it deserves." (R. 21.)

First, the ALJ's statement tells the reviewing court nothing about how much weight Mrs. Salazar's testimony was in fact given. Second, if it was given no weight based solely on their close relationship, the Court finds that the conclusion was flawed. By this reasoning, no person close to a claimant could give credible

11

testimony in support of disability. If that were so, then a claimant could never offer corroborative testimony, because only those with a close relationship would be in a position to give such testimony.

C. **English Literacy**

Plaintiff assigns error to the ALJ's conclusion that he has the ability to communicate in English. This determination was significant, because if he is unable to communicate in English, the grid rules may direct a finding of disability. The regulations define illiteracy as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1); *see also id.* § 404.1564(b)(5) (explaining that "we consider a person's ability to communicate in English when we evaluate what work, if any he or she can do"); *see Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("[T]he question is only whether the applicant is so deficient in ability to read and write that he cannot obtain even an unskilled job.").

The ALJ's decision states: "At the hearing counsel indicated that the claimant has been in the U.S. for many years, and he is able to communicate in English." (R. 22.) First, counsel's actual comment was "There is some . . . English language capacity here. It's just that he can't read . . . and write well in English, but he can speak some English." (R. 32-33.) This statement does not equate to an admission of English literacy under the regulations. Furthermore, in closing,

counsel expressly stated that "[h]e can't read or write in English." (R. 49.) Second, in questioning Salazar shortly after counsel's statement was made, the ALJ said: "Okay, and do you know some English to speak, but you don't read or write in English, correct?", and Salazar answered that it was correct. (R. 33-34.) Her decision also stated that "he does not read or write in English." (R. 19.) This is inconsistent with her ultimate conclusion that he could communicate in English.

Once the issue of Salazar's potential illiteracy was raised, "[t]he ALJ had an obligation to develop a complete record." *Yourek v. Barnhart*, 334 F. Supp. 2d 1090, 1093 (N.D. Ill. 2004) (faulting the ALJ for making no effort to ascertain literacy level by, for example, reading an article or writing a note); *cf. Glenn*, 814 F.2d at 391 (finding claimant who read a recipe at the hearing to be sufficiently literate). There is ample evidence in the record suggesting Plaintiff cannot communicate in English. At the hearing, he testified in both English and Spanish with the aid of an interpreter, and there are a number of notations in Dr. Michael's notes that Salazar relied on his daughter as an interpreter at his medical appointments. In addition, his prior employment as a heavy laborer is not inconsistent with his claim of English illiteracy. *Perez v. Astrue*, No. 07 C 2981, 2008 WL 4874130, at *8 (N.D. Ill. July 31, 2008) (upholding ALJ's finding of English illiteracy when claimant understood little spoken English, could not read English, and spoke only Spanish in his prior employment). Because the record contains insufficient evidence to base a finding of literacy, the case must be remanded for a proper determination. *See Cole v. Apfel*, No. 98 C 6735, 2000 WL 290432, at *5 (N.D. Ill. Mar. 17, 2000).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 12] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**             **ENTERED:**

*/s/ Maria Valdez*

**DATE:  October 20, 2015**

                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**